Jessie V. **ROBERTSON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15876.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 24, 1961.

Decided July 11, 1961.

Mr. Jo. V. Morgan, Jr., Washington, D. C., with whom Messrs. Roger J. Whiteford, Washington, D. C., and Scott W. Lucas, Springfield, Ill., were on the brief, for appellant.

Mr. Abbott A. Leban, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Oliver Gasch, U. S. Atty., at the time of argument, and Carl W. Belcher, Asst. U. S. Atty., at the time of argument, Washington, D. C., were on the brief, for appellee.

Mr. John D. Lane, Asst. U. S. Atty., at the time the record was filed, Washing-

ton, D. C., also entered an appearance for appellee.

Before FAHY, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

The appellant's complaint alleged that on November 21, 1956 in the District of Columbia [1] she was injured when struck by an automobile said to have been negligently operated by one Roger L. Van Handenhove. The latter at that time was a Corporal in the military forces of the Kingdom of Belgium, serving here as a clerk in the office of the military attache with the Belgian Embassy. Liability of the United States is asserted because of the provisions of the Federal Tort Claims Act [2] as applied pursuant to section 2 of the Act of August 31, 1954, [3] and to Art. VIII, Par. 5 of the NATO agreement. [4] The District Court denied the Government's motion to dismiss, but likewise denied the appellant's later filed motion to compel the United States to seek arbitration with respect to the status of Corporal Van Handenhove. The District Court ruled that its order with respect to arbitration involved a controlling question of law and that an immediate appeal was appropriate. We brought the case here on appellant's timely application for allowance of an appeal from the interlocutory order, [5] under the following circumstances.

Appellant's complaint had alleged that the Corporal at the time of the allegedly tortious act was "in the performance of his official duty as one of the military personnel of the Government of the Kingdom of Belgium." The Government's answer admitted that Corporal Van Handenhove was a member of the Belgian Army, but otherwise denied the controlling allegations of the complaint. As a "Fourth Defense" the answer alleged that Corporal Van Handenhove "is not, and was not at the time alleged in the complaint, a member of a 'force' as defined by the Agreement Between The Parties To The North Atlantic Treaty Regarding The Status of Their Forces." The Government substantially refused appellant's request for admissions, specifically that the Corporal "was in the performance of his official duty as one of the military personnel of the Government of the Kingdom of Belgium while driving the motor vehicle which struck plaintiff as she was crossing Connecticut Avenue, N. W. in the District of Columbia."

Appellant thereafter moved for an order compelling the United States to submit to arbitration [6] the question of whether or not the Corporal "was in the performance of his official duty. * * *" The denial of that motion gave rise to this appeal.

Unless the Corporal at the time in suit was a member of a "force" as defined in the treaty, [7] there can be no liability on the part of the United States arising

1. 28 U.S.C. § 1402(b) (1958).

2. 28 U.S.C. ch. 171 (1958), § 2671 et seq.

3. 68 Stat. 1007 (1954), 31 U.S.C.A. § 224i-3 (1958).

4. 4 U.S.T. & O.I.A. (Part 2) 1806 (1955).

5. 28 U.S.C. § 1292(b) (1958).

6. The NATO treaty in Art. VIII, Par. 8 provides:

"8. If a dispute arises as to whether a tortious act or omission of a member of a force * * * was done in the performance of official duty * * * the question shall be submitted to an arbitrator appointed in accordance with paragraph 2(b) of this Article, whose deci-

sion on this point shall be final and conclusive."

7. The NATO treaty in Art. I, Par. 1(a) sets forth that the expression "force" means

"the personnel belonging to the land, sea or air armed services of one Contracting Party [Belgium] when in the territory of another Contracting Party [United States] in the North Atlantic Treaty area in connexion with their official duties, provided that the two Contracting Parties concerned may agree that certain individuals, units or formations shall not be regarded as constituting or included in a 'force' for the purposes of the present Agreement."

from his tortious act, whether done in the performance of official duty or not. Appellant has here assumed, not without reason, that the Corporal was then a member of a force. Attached to the Government's supplemental motion to dismiss was a certified copy of a note dated December 17, 1958, from the Embassy of Belgium to the Department of State. Therein appears the following:

> "The Embassy's records indicate that Corporal Van Handenhove was officially certified to the Administrative Office of the NATO Standing Group, and that his name appears, inter alia, on the memorandum (Annex B) 7054 dated September 15, 1954 of the Military Representative Committee as a member of the NATO personnel who could benefit from the Agreement on the Status of the North Atlantic Treaty Organization, National Representatives and International Staff." [8]

■ It fairly may be concluded that the Corporal at some time—for how long does not appear—had been a member of a force, and was so regarded by his own government. Appellant would have us say that if it be established that the sending State's personnel at some time was a member of a force, the Contracting Parties may not "agree" [9] otherwise at a later date. We do not so narrowly read the treaty provision. We may assume that the status of the personnel of NATO missions, our own included, is constantly changing. Whether or not a representative of a NATO signatory is a member of a force should be the subject of investigation after a claim has been filed just as a signatory may inquire whether or not his tortious act had been done in the performance of official duty.[10]

Here the appellant's request for admissions was filed October 13, 1958. The Department of State sent to the Embassy of Belgium a note dated October 14, 1958,[11] which predicated the Embassy's reply, supra. For all we can tell, the Department of State then asserted to the Belgian government an official conclusion of our government that the Corporal at the time of tort was *not* a member of a force, with which the sending State agreed. We are of the opinion that such an official exchange of views as to his status would have like effect, even if the agreement were now to be concluded. But there is no evidence of such an agreement.

■ Instead, the Government asks us to accept as evidence of an agreement within the meaning of the treaty, a letter [12] from the Department of State to

---

8. The note (No. 4397) concludes:
"From a communication received from the Belgian Ministry of Defence upon review of the case, it appears, however, that he was not a member of a 'force' as defined in Article I of the Agreement Between The Parties To The North Atlantic Treaty Regarding The Status Of Their Forces."
This unilateral determination by the Kingdom of Belgium clearly does not bind the United States. See, e. g., Art. XVI of the treaty, and note 10 infra.

9. See the proviso in Art. I, Par. 1(a), supra note 7.

10. Important consequences flow from such determinations. For example, Art. VIII, Par. 6 of the treaty deals with situations where the tortious act of a force member is not done in the performance of official duty. The receiving State may represent that fairly the sending State should consider an *ex gratia* payment. If the sending State be alone responsible, Par. 5 provides that it shall be charged 75% of the amount of the award, and the receiving State with 25% thereof. Art. XVI provides that all differences between the Contracting Parties relating to the "interpretation or application" of the treaty shall be settled by negotiation or be referred to the North Atlantic Council.
Obviously, if the Contracting Parties *agree* that an individual is not a member of a force, this appellant is without recourse in the courts.

11. We do not have of record a copy of that note.

12. Therein the Acting Legal Adviser expressed the "understanding" of the Department that the Corporal was merely a member of the Embassy staff and not a member of a "force."

the Department of Justice. We think the rights of the injured claimant are not to be foreclosed thus informally. A mere announcement of a principal to its attorney that it "understands" no liability may attach in a given situation has been given no such effect in the courts, so far as we can find.

█ We do not say that the Corporal was a member of a "force." [13] We say it has not yet been shown that he was not, in the manner permitted by the treaty. We affirm the District Court's order on the ground that it is without power to order our Government here to seek arbitration. This is so for various reasons, among which we may mention: first, because this suit against the Government is permitted only in accordance with the Act which, in turn, depends upon the terms of the international agreement. 31 U.S.C.A. § 224i–2 (1958), 68 Stat. 1006 (1954); 31 U.S.C.A. § 224i–4 (1958), 68 Stat. 1007 (1954). Second, there is no provision in the treaty authorizing a private citizen to compel the United States to initiate international political action in a field reserved solely to the sovereign. Cf. Art. VIII, Par. 2 (b) of the NATO agreement, supra, and Art. XVI. Third, the *status* of the foreign national is not subject to arbitration in any event, for Art. VIII, Par. 8 becomes operative only if a "member of a force" be involved and if so the language provides for arbitration, pertinently, only as to whether or not the tortious act of that member was done in performance of official duty.

Accordingly, the posture of the case may be restated thus. The denial of the Government's motion to dismiss reflects the District Court's conclusion that, prima facie at least, appellant is entitled to proceed on the unrefuted premise that the Corporal was a member of a force at the time of the tort. If appellant can bring her right to sue within the treaty and the Act, obviously the Government is in the position of any private litigant. If, having the facts available, it refuses to concede that the Corporal was then in performance of official duty, or to arbitrate that question, the fact will be taken against it. The Government may not "have it" both ways.[14] No claim of privilege has here been asserted. See United States v. Reynolds, 1953, 345 U.S. 1, 6, 7, 73 S.Ct. 528, 97 L.Ed. 727. Where Congress has provided that the Government may be liable, under certain conditions, it would be unconscionable to permit the Government to refuse to disclose facts essential to the demonstration that such conditions have been satisfied. This is not a case of the suppression of documents or evidence which might help determine controversies between third persons. Compare Jencks v. United States, 1957, 353 U.S. 657, 671, 672, 77 S.Ct. 1007, 1 L.Ed.2d 1103.

As noted, this intermediate appeal was allowed simply to review the District Court's refusal to order arbitration. Even as we affirm that ruling, we assume that in further proceedings, the Government will be afforded a reasonable time within which by adequate evidence to demonstrate the fact, if it be a fact, that the United States and Belgium have agreed, within the meaning of the treaty, that the Corporal was not a member of a force at the time of the tort. If it shall be so made to appear, we may assume that the Government's motion to dismiss, previously denied, will be renewed and granted. Otherwise, there will be further proceedings not inconsistent with what has been said.

Affirmed.

FAHY, Circuit Judge (concurring).

I concur in affirming but do so on the ground that under the NATO Agree-

---

13. The Government on brief concludes, "[I]f this Court be of opinion that Corporal Van Handenhove was a member of a 'force,' the appealed order should be affirmed and this cause remanded to the District Court with directions to hold the cause in abeyance pending arbitration, if the Contracting Parties be so advised."

14. See note 10 supra.

**924**

ment,[1] considered in its several provisions which must if possible be given meaning as a consistent whole, the question whether the corporal was a member of the "force" of Belgium, and therefore whether the accident came within the purview of the Agreement, is a matter with respect to which the court may take no action in this case. Article XVI of the treaty provides:

"All differences between the Contracting Parties relating to the interpretation or application of this Agreement shall be settled by negotiation between them without recourse to any outside jurisdiction. Except where express provision is made to the contrary in this Agreement, differences which cannot be settled by direct negotiation shall be referred to the North Atlantic Council." [2]

It is true that the two governments have not disagreed as to the status of the corporal; on the contrary, both have concluded that he was not a member of the force at the time of the accident. This conclusion is not, however, an agreement within the terms of the proviso in Article I, paragraph 1(a); [3] it is rather the reaching of the same opinion as to the status of the corporal. The Embassy of Belgium advised our Department of State of Belgium's interpretation of the situation, which is consistent with that of the Acting Legal Adviser of the Department of State. He advised the Department of Justice in connection with the present litigation that the employment of the corporal at the Belgium Em-

bassy, together with other factors regarding the corporal's situation, "all demonstrate the understanding of the Embassy and the Department, as well as that of Corporal Van Handenhove himself, that he was not a member of the force as defined in Article I of the NATO Status of Forces Agreement." The Acting Legal Adviser then gave the opinion of his Department that neither the Agreement nor the United States Code provision upon which the plaintiff relies is applicable.

When this accord between the two governments is considered with the provisions of Article XVI, above referred to, that all differences between the governments are to be settled by negotiation or referred to the North Atlantic Council, I think it must be given the effect of withholding from the jurisdiction of the courts any action with respect to the application of the Agreement to the corporal. For if differences of opinion between the contracting governments as to the application of the Agreement are withheld from the judiciary, to be settled by negotiation or referred to the North Atlantic Council, obviously it follows that accord of opinion on the part of the two governments withholds the matter from the judiciary when such accord is that the Agreement does not apply to an individual. This seems to me to be a necessary implication from the provisions of Article XVI, considered with the Agreement as a whole. Since, therefore, the court may not go into the question of the corporal's status there is no judicial relief available to the plaintiff.

1. Agreement Between the Parties to the North Atlantic Treaty Regarding the Status of Their Forces, June 19, 1951 [1953] 4 U.S.T. & O.I.A. (Part 2) 1792, T.I.A.S. No. 2846.

2. 4 U.S.T. & O.I.A. (Part 2) at 1818.

3. 1. In this Agreement the expression—
(a) "force" means the personnel belonging to the land, sea or air armed services of one Contracting Party when in the territory of another Contracting Party in the North Atlantic Treaty area in connexion with their official duties, provided that the two Contracting Parties concerned may agree that certain individuals, units or formations shall not be regarded as constituting or included in a "force" for the purposes of the present Agreement.
4 U.S.T. & O.I.A. (Part 2) at 1794.